UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

STEVEN FERGUSON,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      No. 2:26-cv-00347-JPH-MKK
                                    )
CENTURION HEALTH, *et al.*,         )
                                    )
            Defendants.             )

**ORDER SCREENING COMPLAINT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Steven Ferguson is a prisoner currently incarcerated at Wabash Valley Correctional Facility ("W.V.C.F."). He filed this civil action alleging violations of his constitutional rights. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

1

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Ferguson names six defendants in his complaint: (1) Centurion Health, LLC; (2) Mindy Rhoton, LPN; (3) Makayla Willis, RN; (4) Samuel Byrd, M.D.; (5) Grievance Specialist Shania Jones[1]; and (6) Grievance Specialist Carla Coakley. Mr. Ferguson's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). He sues each defendant in their individual and official capacities. Dkt. 1 at 2-3.

Mr. Ferguson has a history of getting lipomas. *Id.* at 5. On January 20, 2025, he began to experience pain from a bump on the middle finger of his left hand. *Id.* One week later, he submitted a health care request form ("HCRF") [No. 639576]. *Id.* Nurse Rhoton responded that he was scheduled to see Dr. Byrd next month, but he was not seen. *Id.* On February 15, he filed another HCRF [No. 639578] due to an increase in pain. *Id.* On February 18, Nurse Rhoton pulled Mr. Ferguson out of his cell to talk and take his vitals but could not provide any information regarding the appointment with Dr. Byrd. *Id.* That

---

[1] The defendant identified as "Shania Jene" on the docket is referred to as "Shania Jones" throughout the complaint. The **clerk is directed** to update the spelling of the defendant's name to "Shania Jones."

2

day, his second HCRF was responded to and included a response from Nurse Rhoton that stated, "left hand middle finger hard double knot." *Id.*

On March 5, Mr. Ferguson submitted his third HCRF [No. 624912] because he had still not been seen by Dr. Byrd or received any pain medication. *Id.* at 6. One week later he received a response to the HCRF that only said "scheduled." *Id.* On March 10, he submitted a fourth HCRF [No. 624913] complaining about the pain and lack of an appointment with the doctor. *Id.* The response that came in said "seen." *Id.* On March 17, Dr. Byrd saw Mr. Ferguson, ordered an ultrasound on his hand, and said he would prescribe him pain medication, but ultimately did not. *Id.* On March 31, Mr. Ferguson filed a fifth HCRF [No. 624966] inquiring about the results of the ultrasound and requesting pain medication. *Id.* The response said, "scheduled again." *Id.* After asking for pain medication, Dr. Byrd said he would prescribe Meloxicam, which Mr. Ferguson alleges is an anti-inflammatory that would not help pain. *Id.* at 7.  When Mr. Ferguson asked for a pain reliever that would be more effective, Dr. Byrd replied that his employer, Centurion, would not let him due to the cost of prescriptions. *Id.*

On May 15, Mr. Ferguson submitted a sixth HCRF [No. 629874] regarding unbearable pain in his hand. *Id.* Nurse Biggs saw Mr. Ferguson, and he informed her that the Meloxicam did nothing for his pain. *Id.* She then emailed a nurse practitioner to inform them of his pain. *Id.* The response to the HCRF noted Mr. Ferguson's pain levels, attempts to relieve pain through

3

Meloxicam and Voltaren without success, and that she emailed the Nurse Practitioner. *Id.* at 8.

On May 26, he filed his seventh HCRF [No. 610546] highlighting his constant pain, the fact that the Meloxicam was not helping, and that nothing had been done to help his pain. *Id.* at 7-8. The response to this HCRF was "seen (NSC) 5-22-25." *Id.* at 8. It also noted that additional testing was needed, medical was waiting on approval, and an email was sent regarding pain relief. *Id.*

On May 16, he filed a grievance [No. 25-214426] about the pain he was experiencing, the ineffective medication he was prescribed, and the fact that he told nurses and doctors that the medication was ineffective and yet nothing was done about it. *Id.* The response to this grievance provided that the records show that he was seen by the provider for these issues, given medications, and had an offsite MRI approved and scheduled. *Id.* It also stated that Mr. Ferguson refused to go to his MRI appointment. *Id.* He checked the disagree box on the form and wrote a statement that he did not refuse to go but instead was housed in segregation and assumes that is the reason he was not at the appointment. *Id.* at 8-9. He then filed a grievance appeal to Grievance Specialist Shania Jones which was never responded to or processed. *Id.* at 9. Mr. Ferguson alleges that this is emblematic of a broader issue where grievance specialists intentionally do not process appeals. *Id.* Mr. Ferguson alleges that Ms. Jones's failure to respond to his grievance prolonged his pain and suffering. *Id.* at 16.

He then filed his eighth HCRF [No. 610586] stating that when the officers were preparing to take Mr. Ferguson to his MRI appointment, he requested to use the restroom before travel, and the officers then took him back to his cell and left him there instead of taking him to his appointment. *Id.* at 9. In this request, he asked Dr. Byrd to reschedule the appointment, which he did. *Id.* When Mr. Ferguson went to his MRI appointment, he saw a specialist who explained to him that if the lipoma was not removed soon, it would cause more serious problems. *Id.* The specialist made an appointment for removal surgery and prescribed ibuprofen. *Id.* The prescription was only for a short time, but it did help with the pain. *Id.*

Mr. Ferguson submitted his ninth HCRF [No. 658509] on November 8, after months of not hearing about his ultrasound results. *Id.* at 10. In it, he mentioned his pain, the removal surgery, and the fact that his prescription ran out. *Id.* The response stated that Nortriptyline was ordered and Trileptal was cancelled, but those medications were related to his lower back nerve pain, and not the lipoma on his hand. *Id.*

On November 25, Mr. Ferguson filed a second grievance [No. 25-235467] explaining that the lipoma on his hand had still not been removed, he is in a lot of pain because his prescription ran out, every time he sees Dr. Byrd he blames others for the lack of medical attention he gives. *Id.* He specifically requested a pain reliever and surgical removal of the lipoma. *Id.* Carla Coakley sent a receipt of the filed grievance; however, it was never responded to. *Id.* Mr. Ferguson alleges that the non-response prolonged his pain. *Id.* at 18. Dr. Byrd

saw Mr. Ferguson and informed him off-record that he cannot put this on paper because he feared being fired, but he wanted to provide insight into the situation. *Id.* at 11. Dr. Byrd said that he could only do so much because Centurion disapproves of it and told him that his offsite surgery had been canceled but could not give details as to why. *Id.* Dr. Byrd also said that he could not keep prescribing Mr. Ferguson painkillers because Centurion complains about excessive prescription fees. *Id.* Following this encounter, Mr. Ferguson filed a grievance asking why his scheduled appointment had been canceled. *Id.* The return receipt came from Carla Coakley and stated, "you[']r[e] scheduled to see the provider to discuss." *Id.*

On December 1, he filed his tenth HCRF [No. 658641] that the ibuprofen prescription had expired and that he needed medication for the pain. *Id.* Nurse Willis sent back the response "renewed." *Id.* The next day, Mr. Ferguson filed his eleventh HCRF [No. 669107] stating that he was in a lot of pain and asking about his canceled appointment. *Id.* Nurse Willis responded "renewed." *Id.* at 12. At some point thereafter, when Nurse Willis was delivering medications in the housing unit, Mr. Ferguson asked if she had any medications for him, to which she responded, "I don't have shit for you, I wouldn't piss on you if you caught on fire and [were] burning." *Id.*

When Mr. Ferguson files HCRFs, he is no longer seen by medical staff. *Id.* Recently, Dr. Byrd began prescribing ibuprofen to him, but only after he filed suit. *Id.* On April 28, 2026, Dr. Byrd gave Mr. Ferguson a chronic care check-up where Dr. Byrd told him that he has a surgery scheduled for the

lipoma on his finger. *Id.* He did not know that his prescription had run out and admitted that Mr. Ferguson must have been in pain. *Id.* On May 5, Mr. Ferguson was transported to Terre Haute Regional Hospital where he had the lipoma removed, and his hand stitched. *Id.* He was not provided with additional pain medication but continued taking the ibuprofen he had been prescribed earlier. *Id.*

He seeks compensatory and punitive damages. *Id.* at 1.

### III. Discussion of Claims

Although a plaintiff need not plead legal theories in a complaint, see Fed. R. Civ. P. 8(a), Mr. Ferguson has identified the theories he wishes to use— Eighth Amendment deliberate indifference, Eighth Amendment failure to train, and *Monell* Liability. Where a pro se litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the Court analyzes Mr. Ferguson's claims only under the theories he has identified.

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, all of Mr. Ferguson's official-capacity claims are **dismissed**. Mr. Ferguson does not seek injunctive relief. *See Knowlton v. City of*

*Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024) ("In an individual capacity suit, a plaintiff may only seek monetary damages; in an official capacity suit, a plaintiff may only seek injunctive or declaratory relief.").

Additionally, claims brought under the Eighth Amendment for deliberate indifference to serious medical needs against Nurse Rhoton are **dismissed** for failure to state a claim upon which relief may be granted. "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Based on the allegations, the Court assumes that Mr. Ferguson's hand lipoma is an objectively serious medical condition. However, he has not shown how Nurse Rhoton was subjectively indifferent to his needs. On one occasion Ms. Rhoton responded to Mr. Ferguson's HCRF informing him that he was scheduled to see Dr. Byrd, and on another, she detailed his condition in response to the HCRF after pulling him from the cell to take his vitals. Dkt. 1 at 5. Her responsive actions cannot be viewed as indifferent and for this reason, any Eighth Amendment claim of deliberate indifference against her must be **dismissed**.

Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To state a *Monell* claim, the plaintiff must identify an action taken by the municipality and allege a causal link between the municipality's action and the deprivation of federal rights. *Dean,* 18 F.4th at 235. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019).

Mr. Ferguson asserts *Monell* claims against Centurion for (1) maintaining a policy and/or procedure that denies incarcerated individuals' pain medications due to cost, (2) failing to train their employees on how to properly diagnose patients who present with issues that they know are continuously causing pain over an extended period of time, and (3) acting with deliberate indifference to his serious medical needs. Dkt. 1 at 14.

A *Monell* claim **shall proceed** against Centurion for maintaining a policy, procedure, or custom that discouraged the provision of appropriate care to reduce the cost of care and for acting with deliberate indifference to his serious medical needs.

The claims which shall proceed are the following. Eighth Amendment claims of deliberate indifference **shall proceed** against Dr. Samuel Byrd, Nurse

Makayla Willis, Grievance Specialist Jones, and Grievance Specialist Coakley. A *Monell* claim **shall proceed** against Centurion Health, LLC.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through September 7, 2026,** in which to file a motion to reconsider the screening order.

The **clerk is directed** to terminate Mindy Rhoton, LPN as a defendant on the docket.

### IV. Conclusion and Service of Process

The following claims are proceeding in this action: Eighth Amendment claims of deliberate indifference against Dr. Samuel Byrd, Nurse Makayla Willis, Grievance Specialist Jones, and Grievance Specialist Coakley. A *Monell* claim against Centurion Health, LLC. All other claims have been dismissed.

The **clerk is directed** to update the spelling of the defendant identified as "Shania Jene" on the docket to "Shania Jones."

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants in the manner specified by Rule 4(d). Process shall consist of the complaint filed on May 13, 2026, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Centurion and IDOC employees electronically.

Defendants Makayla Willis, RN and Samuel Byrd, M.D. are identified as employees of Centurion. A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 8/12/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

STEVEN FERGUSON
956691
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Electronic service to Centurion
     Makayla Willis, RN
     Samuel Byrd, M.D.

Electronic service to the IDOC
     Carla Coakley
     Shania Jones
     (All at Wabash Valley Correctional Facility)